OPINION OF THE COURT
William R. Roy, J.
These three CPLR article 78 proceedings — each by multiple *758 petitioners homeowners — have been brought to review decisions by Hearing Officers in small claims assessment review proceedings brought pursuant to title 1-A of article 7 of the Real Property Tax Law to raise claims of inequality in the assessments of petitioners’ residential properties.
In each of the three article 78 proceedings respondent Board of Assessment moved to dismiss on a variety of grounds, but principally on the ground of improper joinder of petitioners; the motions to dismiss were denied following oral argument, because the court is satisfied that the requirements of CPLR 1002 (a) for permissive joinder (claims arising out of the same series of transactions presenting a common question of law or fact) have been met. Given the broad liberality accorded joinder statutes (Tanbro Fabrics Corp. v Beaunit Mills, 4 AD2d 519, 524), the individual small claims assessment reviews secured by petitioners constituted the necessary series of transactions, and the primary question posed — i.e., whether the Hearing Officers could take into consideration evidence offered by the Board of Assessment to impeach the residential assessment ratio offered by petitioners — fulfilled the requirement of a common question of law or fact (Hempstead Gen. Hosp. v Liberty Mut. Ins. Co., 134 AD2d 569; Betzler v Carey, 109 Misc 2d 881, affd 91 AD2d 1116, lv denied 59 NY2d 601).
No advantage would accrue to either the petitioners or the respondent — and certainly none to the judicial system — by requiring that a separate article 78 proceeding be instituted with respect to each parcel assessed (which total more than 50 parcels in Adams alone), other than the discouragement of owners of individual parcels from seeking the judicial review expressly made available to them by Real Property Tax Law § 736 (2).
The remaining grounds on which dismissal was sought (other than those addressing the merits of the article 78 proceedings) were also rejected by the court at oral argument. The claim that petitioners have waived their right to seek a determination of a different assessment ratio by not bringing a tax certiorari proceeding under article 7 of the Real Property Tax Law is predicated on an erroneous assumption with respect to the object of petitioners’ small claims assessment review proceedings; what was sought by them was a change in their individual assessments on the ground of inequality— which is relief that title 1-A proceedings are expressly designed to provide — in these cases, by application of the residential assessment ratio promulgated by the State Board of *759 Equalization and Assessment, not by a change of that ratio. Finally, the inclusion in petitioners’ papers of a decision by another small claims assessment Hearing Officer would in no event be a basis for dismissal of these article 78 proceedings.
Turning then to the merits of these proceedings: It must be noted at the outset that the process provided by the small claims assessment review title is unique, and is intended to make possible a residential homeowner’s prompt procurement of correction of an unequal or excessive assessment by a qualified Hearing Officer, experienced in real property assessment and valuation, in the context of an informal hearing. Among the items that may be considered is a "Residential Assessment Ratio” (RAR), a figure calculated by the State Board of Equalization and Assessment (SBEA) in accordance with Real Property Tax Law § 738 specifically for use in title 1-A proceedings. The hearings are to be conducted "on an informal basis in such manner as to do substantial justice between the parties” (RPTL 732 [2]), and the homeowner need not present expert witnesses, be represented by an attorney or be bound by rules of practice, procedure, pleading or evidence. The Hearing Officer is required to consider the best evidence presented in each particular case, and the statute expressly provides that such evidence "may include, but shall not be limited to, the most recent equalization rate established for such assessing unit, the residential assessment ratio promulgated by the state board * * * and the assessment of comparable residential properties within the same assessing unit” (Real Property Tax Law § 732 [2]; emphasis supplied). A written decision is required to be issued by the Hearing Officer which "shall state the findings of fact and the evidence upon which it is based” (Real Property Tax Law § 733 [4]).
There is no requirement that any transcript of the hearing be prepared, which in some instances may pose a problem when, as here, an article 78 proceeding is brought by a homeowner to challenge the action or the determination of a Hearing Officer and a knowledge of events occurring, or of the evidence submitted, at the hearing is critical.
In the present cases, however, there is no dispute that the Board of Assessment put before each of the Hearing Officers documents to impeach and demonstrate inaccuracy of the RAR of 6.64% which had been promulgated by SBEA and had been introduced by petitioners as the major component of their proof to show inequality of their assessments. The assessments, when aligned with petitioners’ evidence of the valúa *760 tians of their properties — evidence not controverted by the Assessment Board which, however, did not concede the valuations — reflected a ratio in every instance higher than the RAR of the taxing unit.
By responding papers, petitioners raised objection to the Board’s submissions, arguing, as they do in these CPLR article 78 proceedings, that an attack on the RAR by the assessing officer lies only through the process set out in Real Property Tax Law § 738 (2), by which the assessor may, within 30 days after issuance of the RAR, present documentation to SBEA showing material error in the ratio in order to have a new ratio computed. It is petitioners’ position that the assessor may not forego the process thus provided and instead mount a collateral attack on the RAR in a small claims assessment review proceeding instituted under title 1-A.
Petitioners’ argument is that, because the equalization rate of 9.3% (put before the Hearing Officers by the Board of Assessment) had been impugned by the Board’s own voluntary reduction of challenged assessments on grievance day to an 8% rate, and because information of assessments of comparable properties was impaired "because serious sampling problems exist”, the RAR issued by SBEA — immune, they assert, from collateral attack by the Board — was the "best evidence” before the Hearing Officers. Consequently, the assessments determined by the Hearing Officers, which (by their computations from what they claim were the values of their properties) reflect ratios greater than the RAR, were arbitrary and capricious.
The linchpin of petitioners’ position is their assertion that the Board of Assessment could not in small claims assessment review proceedings challenge the RAR and by documentary evidence demonstrate that it was inaccurate and not credible, by reason of the fact that a substantial number of the properties used in its computation did not qualify for consideration because they were not improved residential property at the times required by Real Property Tax Law § 738 (3) or because the reports from which data was obtained were erroneous or incomplete.
No such prohibition is to be found, however, in the small claims assessment review statute. On the contrary, Real Property Tax Law § 732 (2) is generous in its reference to admissible evidence, identifying three specific items of proof (including RARs), but making clear the fact that the specification *761 was not a restriction by the preceding words "but shall not be limited to”.
In face of this statutory receptiveness, and the principle that favors admission of proof directed to the disclosure of accurate and truthful data absent some established rule of evidence barring the proof tendered, significant authority must be shown in order for this court to conclude that the Board of Assessment’s proof was improperly submitted and improperly considered by the Hearing Officers.
Lacking any basis in the statute for the exclusion for which they argue, petitioners seek an extension of decisions of appellate courts that have held, in proceedings other than small claims assessment review proceedings, that recourse to the direct procedure provided by article 12 of the tax statute for challenge to tentative and final equalization rates, rather than collateral attack in other proceedings, is the route required of a municipality or taxing authority for dispute of the methodology employed by SBEA in fixing an equalization rate (860 Executive Towers v Board of Assessors, 53 AD2d 463, affd sub nom. Matter of Pierre Pellaton Apts. v Board of Assessors, 43 NY2d 769; Matter of Standard Brands v Walsh, 92 Misc 2d 903; see also, Matter of Town of Mount Kisco v State Bd. of Equalization & Assessment, 64 NY2d 950).
The court is not persuaded, however, that the holdings or reasoning of the cases cited apply to bar the impeachment of an RAR or an attack on the weight to be given to it by an Assessment Board’s submission of evidence that undermines the data on which it was computed.
An initial ground for distinction of the 860 Executive Towers and Standard Brands cases (supra) is that they both involved tax certiorari proceedings brought under article 7 of the Real Property Tax Law to which section 720 (3) of the statute applies. That section then, as now, expressly provided that "[T]he parties shall be limited in their proof’ (§ 720 [3] [b] [2]) to specified particulars, of which the SBEA equalization rate was one, without the expansive language present in section 732 (2) of the small claims assessment review title.
Even more significant, however, is the dignity that has been accorded equalization rates, which the Court of Appeals described in the landmark decision of Guth Realty v Gingold (34 NY2d 440, 450) as "objectively arrived at” and "expertly arrived at” — descriptions that flow naturally from the detailed and broad-ranging methodology statutorily prescribed and *762 administratively implemented for their determination (Real Property Tax Law § 1202; 9 NYCRR part 186). Among other specifications, subdivision (2) of section 1202 provides that in establishing State equalization rates, SBEA "may, in its discretion, take testimony and hear proof under oath or otherwise, and may avail itself of all information appearing in its office or acquired in the discharge of its duties and may employ experts or other persons to procure any information required for such purpose.” In the exercise of this authority the State agency has adopted a comprehensive procedure for arriving at equalization rates which, among other factors, employs market values fixed on the basis of actual evaluations by qualified real estate appraisers on the staff of SBEA. (By contrast, the RAR is computed from "full sales prices” as given on real property transfer reports [Form EA-5217], prepared variously and indiscriminately by sellers, purchasers or attorneys for either [9 NYCRR subpart 191-3].)
Additionally, sections of article 12 of the statute make detailed provision for promulgation of equalization rates in tentative form (§ 1204), for challenge (§§ 1206, 1208) for finalization and certification (§§ 1210, 1212) — provisions which do not exist with respect to RARs, governed as they are wholly within the three subdivisions of Real Property Tax Law § 738. So too, although the statute provides both an administrative and a judicial route for correction of equalization rates at the instance of the taxing unit (§§ 1208, 1218), an assessor may obtain SBEA correction of an erroneous RAR in more limited circumstances only — i.e., on documentation that the RAR "is materially in error” (§ 738 [2]) — and no explicit right of judicial review is provided.
In light of the foregoing, the court is not warranted in attributing to the computation of an RAR the invulnerability that has been conferred on equalization rates. Accordingly, the Assessment Board’s proof directed at discrediting and diminishing the weight to be given to the RAR proved by petitioners was properly submitted and considered in the small claims assessment review proceedings. With that proof properly before them, the Hearing Officers’ determinations were not arbitrary and capricious by reason of not having applied that RAR.
In addition to the issue of the propriety of the Board’s proof which is raised in each of these article 78 proceedings, other challenges in the Agosh and Arezzo proceedings must be addressed.
*763 In Agosh, which involves 15 determinations of one Hearing Officer and 18 determinations of another, the petitioners complain that, within the group assigned to each officer, the assessments fixed "are not based on a uniform percentage of full value”. Apparently in an attempt to bring themselves within the grounds for disturbing action under review in a CPLR article 78 proceeding, petitioners assert in their memorandum that the Hearing Officers’ decisions were rendered arbitrary and capricious by their failure to "state in their decisions the appropriate percentage of fair value (ratio) to be applied in determining the assessment”. If the ratios being applied had been stated, so goes their argument, it would have appeared that different ratios were being applied.
There are at least three responses to this position: First, the conclusion drawn that a statement of the ratios used would have shown that they were different in each case presumes that the Hearing Officers were bound to accept as values of the properties the appraisals put in evidence by petitioners. They were not so bound, however, and, in light of their occupational experience as real estate agents whom the parties recognized might choose to exercise the right to view the properties statutorily vested in them (Real Property Tax Law § 732 [2]), any conclusion that they necessarily accepted without modification the values set forth in the appraisals produced by petitioners, and from that conclusion, a conclusion as to what ratio was applied in each instance, is entirely speculative.
Second, there is no statutory requirement that a ratio be stated in a Hearing Officer’s decision,* or even that one be computed by the officer, whose task is to determine whether the challenged assessment is unequal or excessive — a function that could be performed by comparisons of values and assessments without the intermediate step of ratio computation, as was done by Hearing Officer Kreifall. To the extent that petitioners challenge the assessments adopted by her on the basis of those comparisons, the review that they urge goes beyond the court’s limited inquiry whether the Hearing Officers’ actions were arbitrary or capricious.
Finally, there must not be overlooked the direction of section 735 of the statute, which provides that "The hearing *764 officer’s decision of a petition for small claims assessment review shall not constitute precedent for any purpose or proceeding involving the parties or any other person or persons.” Read literally, this would seem to foreclose the very argument as to the application of different ratios that petitioners are advancing.
In the third of these CPLR article 78 proceedings (Arezzo) addressing 17 decisions by a single Hearing Officer, there is repeated the claim that the decisions are arbitrary and capricious because they fail to include the ratio being applied by the Hearing Officer. For the reasons stated above, the argument is rejected, and as well for the reason that the decisions, which were identical in each instance, demonstrate that the Hearing Officer’s decision not to disturb the existing assessments was based on a finding that each petitioner had failed to present sufficient proof to overcome a presumption that the assessment was correct or to support the claim of unequal assessment, "i.e., comparable valued properties and their corresponding levels of assessment”. The finding of a deficiency of evidence that would have led the Hearing Officer to determine that the petitioners’ assessments were unequal provided a basis for the decisions rendered without more when, as here, it was an unrefuted presumption, not evidence leading to factual findings, that brought about those decisions. Applicable is the statement from Matter of General Motors Corp. Cent. Foundry Div. v Assessor of Town of Massena (146 AD2d 851, 853): "when the taxpayer’s proof is inadequate, the presumption remains in effect (Matter of Adirondack Mountain Reserve v Board of Assessors, [99 AD2d 600] supra; Matter of Manno v Finance Adm’r of City of N. Y., 92 AD2d 896), and the trial court is not obligated to arrive at a value for the subject property (Matter of Xerox Corp. v Ross, 71 AD2d 84, 89, lv denied 49 NY2d 702).”
Also raised in Arezzo is a claim that the Hearing Officer should have disqualified himself by reason of a conflict of interest resulting from the fact that he had previously been the town’s assessor and had in that capacity fixed assessments on the subject properties. Although the information with respect to the Hearing Officer’s prior position presumably was as available before the proceedings were conducted before him as it was subsequently, apparently no objection was raised to the officer’s participation in these matters until after his decisions had been rendered and no motion or request that he *765 recuse himself was made. That fact alone militates against favorable consideration of the objection now lately raised.
In any event, on the merits the objection cannot succeed. Applying the principles of judicial disqualification, what must exist is a legal disqualification, for "[a]bsent a legal disqualification * * * a Trial Judge is the sole arbiter of recusal” (People v Moreno, 70 NY2d 403, 405). Especially appropriate to the present situation is the following additional language from Moreno: "Yet, this court has noted that it may be the better practice in some situations for a court to disqualify itself in a special effort to maintain the appearance of impartiality (Corradino v Corradino, 48 NY2d 894, 895, supra). Even then, however, when recusal is sought based upon 'impropriety as distinguished from legal disqualification, the judge * * * is the sole arbiter’ (People v Patrick, 183 NY 52, 54, supra; see also, e.g., People v Bartolomeo, 126 AD2d 375, 391, lv denied 70 NY2d 702 [Kaye, J.]; Matter of Johnson v Hornblass, 93 AD2d 732, 733)” (supra, at 406). Petitioners argue for a statutory disqualification by reference to the provision of Real Property Tax Law § 731 (2) that "[a] hearing officer shall disqualify himself or herself from a hearing where such officer possesses a conflict of interest as defined by the public officers law”. There being no express definition of the phrase "conflict of interest” in the statute referred to, petitioners point to sections that bar a public employee from accepting other employment that will impair his independence of judgment in the performance of his official duties (Public Officers Law § 74 [3] [a]) and that urge such employees to so conduct themselves as not to raise a suspicion among the public that they are likely to act in violation of their trust (Public Officers Law § 74 [3] [h]). Even reading these sections as providing a definition of "conflict of interest” for the purpose of Real Property Tax Law § 731 (2), they allude to matters that require discretionary decisions by the employee or Hearing Officer. In a situation in which petitioners assert nothing more than that the Hearing Officer’s independence of judgment "may well have been impaired” and that his position "would likely raise suspicion” of violation of trust, and when no objection to his presiding was raised before the Hearing Officer, who must have been aware of the provision of Real Property Tax Law § 731 (2) but did not deem it necessary to disqualify himself, the attack now made on his participation in the proceedings arising out of a previous employment is not a basis for *766 disturbing his determinations in this CPLR article 78 proceeding.
Petitioners having failed to establish their entitlement to judicial relief with regard to the determinations of the various Hearing Officers that are the subject of these proceedings, the petitions are dismissed.

 The Hearing Officer’s decision "shall state the findings of fact and the evidence upon which it is based”. (Real Property Tax Law § 733 [4].) Nothing more is required by statute.