■ In the Matter of TOWN OF MIDDLETOWN, Petitioner, v STATE BOARD OF REAL PROPERTY SERVICES, Respondent. [706 NYS2d 779] —Mugglin, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to RPTL 1218) to review a determination of respondent which established the final State equalization rate for petitioner's 1998 assessment roll.

In 1998, petitioner conducted a Town-wide revaluation of all real property within its boundaries. This revaluation was last performed in 1989. Respondent employed petitioner's 1998 revaluation figures as the basis for determining petitioner's State equalization rate. The use of the 1998 revaluation values resulted in a decrease from the 1997 State equalization rate, a rate which was determined by respondent using a market value survey. Contending that the equalization rate fixed by respondent was improper based on the simple adoption of petitioner's revaluation values, petitioner filed a complaint with respondent challenging the tentative equalization rate for 1998. Following an investigation and hearing, respondent concluded that the equalization rate was proper. Petitioner commenced this CPLR article 78 proceeding pursuant to RPTL 1218 seeking to have respondent's determination of its 1998 State equalization rate declared null and void on three grounds: (1) the failure of respondent to properly promulgate rules with respect to the newly adopted procedures used by it to calculate equalization rates, (2) the failure of respondent to employ a

method similar to that employed to determine the equalization rates of practically all other municipalities within Delaware County, and (3) the failure of respondent to afford petitioner a full, meaningful adjudicatory hearing on the record.

Respondent is charged with the responsibility for establishing equalization rates* for each of the State's assessing units (*see*, RPTL 1202 [1] [a]). Respondent is required to determine the State equalization rate at least once every three years by conducting a "market value survey" (*see*, RPTL 1200 [1], [2]). Prior to 1996, respondent conducted its market value survey by obtaining and assembling data concerning the market value of all taxable real property within the assessing unit or, in appropriate cases, by relying on information supplied by the tax assessor of the assessing unit regarding the physical characteristics of the taxable parcels (*see*, RPTL 1200 [3]). However, in 1996 RPTL 1200 (3) was amended to specifically authorize the use of sales information and information generated by local revaluation projects in conducting the "market value survey" (*see*, RPTL 1200 [3]; L 1996, ch 309). Local revaluation information could only be used as part of the "market value survey" by respondent if it determined that the data was of sufficient quality and accuracy. As a consequence of this statutory amendment, respondent amended its regulations (*see*, 9 NYCRR part 186, subparts 186-1, 186-2). In determining petitioner's 1998 equalization rate, respondent, after determining that it was of appropriate quality and accuracy, adopted the local assessor's revaluation and assigned an equalization rate of 100 to petitioner.

Petitioner argues that the 1998 amendment of RPTL 1218 (L 1998, ch 368, § 3), which requires proceedings for review to be commenced in the Appellate Division and which establishes a substantial evidence standard of review, mandates that before meaningful review can be accomplished due process requires that, after the appropriate use of disclosure devices, a full hearing be held and the record transcribed. We are unpersuaded by this argument because the amendment to RPTL 1218 represents simply a codification of the substantial evidence standard applied on judicial review of any equalization rate (*see*, *Matter of Nassau County v State Bd. of Equalization & Assessment*, 80 AD2d 9, 10-11; Mem of Office of Real Property Services, Bill Jacket, L 1998, ch 368). Respondent's rules

---

* The equalization rate is the ratio between the assessed valuation of all taxable real property within the taxing entity and the full market value of such taxable real property expressed as a percentage (*see*, RPTL 1202 [1] [a]).

(*see,* 9 NYCRR 186-15.5) and case law (*see, Matter of Town of Greenville v New York State Bd. of Real Prop. Servs.*, 251 AD2d 788, 789; *Matter of Town of Smithtown v Moore,* 11 NY2d 238, 247) clearly establish that a hearing before respondent upon a complaint regarding a tentative equalization rate is not an adjudicatory hearing but is instead a quasi-judicial hearing which will be sustained if supported by substantial evidence.

Next, petitioner contends that the wholesale adoption by respondent of the revaluation data supplied by a taxing entity in fixing its equalization rate is an improper methodology since it has not been approved by the Legislature or the courts and is inconsistent with existing law. We find this argument equally unpersuasive. In challenging a final State equalization rate, the burden is on the petitioner to establish that the rate does not have a rational basis (*see, Matter of Incorporated Vil. of Lynbrook v New York State Bd. of Equalization & Assessment,* 209 AD2d 765, 766). In establishing equalization rates, respondent is required to conduct "market value surveys" of the taxable real property within the taxing unit (*see,* RPTL 1200). The "market value survey" is conducted by respondent based upon any data collected, "including sales data, data made available by local assessors concerning physical characteristics of parcels, the value of such parcels or the aggregate full value of some or all of the parcels within the assessing unit" (RPTL 1200 [3]).

Thus, provided that the data provided by the assessing unit is found to be of sufficient quality and accuracy, it may serve as a basis upon which the equalization rate can be determined. Clearly, respondent verified the accuracy of the full value revaluation conducted by petitioner's assessors before determining that the information contained therein was of sufficient quality and accuracy upon which to predicate the equalization rate. Simply because an adjoining municipality in the same county has an equalization rate which has not been formulated by respondent employing the same methodology—due primarily to the varying sources of data—does not render the equalization rates determined herein irrationally based. We conclude that petitioner has failed to submit probative evidence that respondent's chosen methodology does not have a rational basis, is in any way inaccurate or fails to reflect the appropriate property valuations of its taxable real property. Conversely, we find that respondent's determination is supported by substantial evidence (*see, Matter of Town of Greenville v New York State Bd. of Real Prop. Servs., supra,* at 789-790; *Matter of Town of Hardenburgh v State of New York,* 210 AD2d 673, 674, *lv denied* 85 NY2d 808; *Matter of Incorporated Vil. of Lyn-*

*brook v New York State Bd. of Equalization & Assessment,
supra,* at 766-767).

Finally, petitioner's argument that the "market value survey"
procedures employed in determining equalization rates should
have been promulgated as rules pursuant to the State Admin-
istrative Procedure Act is meritless. Initially, we note that the
relevant portions of the "market value survey," the portions of
general applicability, were properly promulgated as rules (*see,*
9 NYCRR parts 186-1, 186-2). The balance of the so-called
methodology procedures are statutorily exempt (*see,* State
Administrative Procedure Act § 102 [2] [b] [viii]). Also excluded
from regulatory rule requirements are "forms and instructions,
interpretive statements and statements of general policy which
in themselves have no legal effect but are merely explanatory"
(State Administrative Procedure Act § 102 [2] [b] [iv]; *see, Mat-
ter of Burns v New York State Off. of Vocational & Educ. Servs.
for Individuals with Disabilities,* 233 AD2d 781, 782, *lv dis-
missed* 89 NY2d 1002). Since the procedures employed by re-
spondent in formulating equalization rates are merely guide-
posts serving to assist and direct the implementation of the
regulations, such procedures are not required to be promul-
gated as rules.

Spain, J. P., Carpinello, Rose and Lahtinen, JJ., concur.
Adjudged that the determination is confirmed, without costs,
and petition dismissed.