■ In the Matter of TOWN OF YORKTOWN, Petitioner, v STATE BOARD OF REAL PROPERTY SERVICES, Respondent. [713 NYS2d 747] —Proceeding pursuant to CPLR article 78 and RPTL 1218 to review a determination of the State Board of Real Property Services, dated March 24, 1998, which established a final State equalization rate of 4.62% for the 1997 assessment roll of the Town of Yorktown.

Adjudged that the determination is confirmed and the proceeding is dismissed on the merits, with costs.

On March 24, 1998, the respondent State Board of Real Property Services (hereinafter the Board), pursuant to RPTL article 12, established a final State equalization rate of 4.62% for the 1997 assessment roll of the petitioner Town of Yorktown (hereinafter the Town). The Town thereafter commenced this proceeding to review the determination. The Town argues, *inter alia*, that the methodology by which the Board determines equalization rates is no longer uniform, as required by RPTL 1202 (3), and that as a result, the Town suffered significant fiscal harm.

An equalization rate is the ratio between the assessed valuation of all taxable real property within the taxing entity and the full market value of that property, expressed as a percentage (*see,* RPTL 1202 [1] [a]). The establishment of State-wide equalization rates is important because such rates, *inter alia*, impact upon the apportionment of State taxes and aid (*see,* RPTL 1202; 9 NYCRR former 186-1.2 [c]). Until recently, the typical method by which the Board established an equalization rate for a municipality consisted, in very general terms, of the Board appraising a sampling of parcels within a municipality, extrapolating the results to the entire tax roll, and comparing such appraised values to the assessed values of the properties (*see,* RPTL 1202; 9 NYCRR part 186; *Matter of Town of Greenville v New York State Bd. of Real Prop. Servs.,* 251 AD2d 788). Indeed, such a method, which has been scrutinized by the courts and found to result in rates objectively and expertly reached (*see, Guth Realty v Gingold,* 34 NY2d 440; *Matter of Town of Greenburgh v New York State Bd. of Equalization & Assessment,* 226 AD2d 546), was used here to determine the Town's 1997 rate. Recently, however, the Board, in order to, *inter alia*, decrease costs to the State and to avoid unnecessary duplication of work, created four different strategies for determining a State equalization rate for a municipality, several of which place greatly increased reliance on data obtained from a local assessing unit. Under one strategy, for example, a State equalization rate for a city or town that had completed a reassessment for 1996 or 1997 could be established without any appraisals of sample parcels by the Board. The Town argues that the establishment of the four strategies violates RPTL 1202 (5) (a), which requires that the market value survey or surveys designated by the Board for establishing State equalization rates "shall be uniform" for all city and town assessment rolls completed in the same year. We disagree.

Under well-settled canons of statutory construction, a "statute or legislative act is to be construed as a whole, and all

parts of an act are to be read and construed together to determine legislative intent" and the fair meaning of the statute or act (McKinney's Cons Laws of NY, Book 1, Statutes § 97). Further, "if possible, all parts of an enactment shall be harmonized with each other as well as with the general intent of the whole enactment, and meaning and effect given to all provisions of the statute" (McKinney's Cons Laws of NY, Book 1, Statutes § 98). Here, viewing RPTL article 12 as a whole, we do not agree with the Town's contention that the uniformity requirement of RPTL 1202 (5) (a) necessitates that a single method for establishing an equalization rate be applied to all municipalities in any given year.

The goal underlying RPTL article 12 is the establishment of equalization rates for all municipalities in the State in a rational manner (see, Matter of Town of Greenburgh v New York State Bd. of Equalization & Assessment, supra; Matter of Hardenburgh v State of New York, 210 AD2d 673). In furtherance of this goal, the Legislature, in 1990, expressly authorized the Board to use data supplied by a local assessing unit by enacting RPTL 1200 (3). In a memorandum accompanying the original enactment, it was noted: "By permitting [the Board] to use, with sufficient safeguards, data available from local assessors, this bill would reduce duplicity in data gathering by State and local governments. Specifically, [the Board] would be able to realize substantial savings by limiting costly market surveys to assessing units where reliable data are unavailable, and to generate more accurate equalization rates for all localities" (Mem of Assembly Budget Comm, Bill Jacket, L 1990, ch 716). The statute initially addressed only local data concerning the physical characteristics of parcels (see, Mem of Assembly Budget Comm, Bill Jacket, L 1990, ch 716). However, in 1996, the Legislature amended RPTL 1200 (3) to provide: "A market value survey conducted pursuant to this section shall be based upon any data collected or maintained by the state board, including sales data, data made available by local assessors concerning physical characteristics of parcels, the value of such parcels or the aggregate full value of some or all of the parcels within the assessing unit. The state board shall promulgate rules to provide that the quality and accuracy of the data concerning physical characteristics of the parcels and any other data provided by local assessors are sufficient for use in the conduct of the market value survey".

Thus, the Legislature has recognized the value of the Board's use of data made available by a local assessing unit, if found by the Board to be accurate and reliable, and has expressly

sanctioned the increased use of such data. Here, to accept the Town's argument concerning the uniformity requirement of RPTL 1200 (3) would preclude the use of reliable and accurate data unless and until such data was available from the local assessor of every city or town. This would have the practical effect of negating the legislative intent expressed in RPTL 1200 (3) without furthering the underlying goal of establishing rational equalization rates for each municipality in the State. Indeed, acceptance of the Town's argument would almost compel increased costs and delay. The Town has not demonstrated the Board's strategies to be irrational. Thus, as the determination establishing an equalization rate for the Town was rational and supported by substantial evidence, it must be confirmed (*see, Matter of Town of Middletown v State Bd. of Real Prop. Servs.*, 272 AD2d 657; *Matter of Town Greenburgh v New York State Bd. of Equalization & Assessment, supra*).

The Town's remaining contentions are without merit. Ritter, J. P., Sullivan, Krausman and Goldstein, JJ., concur.