Matter of Yeung v Assessor of the Vil. of Great Neck Estates (2026 NY Slip Op 00784)

Matter of Yeung v Assessor of the Vil. of Great Neck Estates

2026 NY Slip Op 00784

Decided on February 11, 2026

Appellate Division, Second Department

Genovesi, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 11, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

FRANCESCA E. CONNOLLY, J.P.
LARA J. GENOVESI
DEBORAH A. DOWLING
LAURENCE L. LOVE, JJ.

2023-08715
 (Index No. 616335/22)

[*1]In the Matter of Connie Yeung, et al., appellants,
vAssessor of the Village of Great Neck Estates, et al., respondents.

APPEAL by the petitioners, in a proceeding pursuant to CPLR article 78 to annul determinations of a hearing officer dated July 15, 2022, denying the petitioners' small claims assessment review applications pursuant to Real Property Tax Law article 7, from an order and judgment (one paper) of the Supreme Court (Diccia T. Pineda-Kirwan, J.), entered July 26, 2023, in Nassau County. The order and judgment granted the respondents' cross-motion pursuant to CPLR 3211(a) and 7804(f) to dismiss the petition, denied the petition, and dismissed the proceeding.

Maidenbaum & Sternberg, LLP (Jonathan A. Stein and Horn Appellate Group, Brooklyn, NY [Scott T. Horn], of counsel), for appellants.
Cullen and Dykman LLP, Uniondale, NY (Gerard Fishberg, Michael B. Weiss, and Sarah Franzetti of counsel), for respondents.

GENOVESI, J.

OPINION & ORDER
In New York State, the property tax is a local tax that is raised and spent locally to finance local governments and public schools. The New York State Office of Real Property Tax Services (hereinafter the ORPTS) administers an equalization program, which assures equitable property tax allocation among the nearly 4,000 taxing jurisdictions in the State, in an effort to ensure the proper allocation of funds (see New York State Office of Real Property Tax Services, Understanding the Equalization Rate, available at https://www.tax.ny.gov/pdf/publications/orpts/pub-1121.pdf [last accessed Jan. 13, 2026]).
Fundamentally, an equalization rate is the State's measure of a municipality's level of assessment (see generally Harry O. Lee & Wilford A. LeForestier, Review and Reduction of Real Property Assessments in New York [3d ed, 1988]). It provides a broad measure of how a municipality assesses property compared to market value. According to the New York State Department of Taxation and Finance, in the State, each municipality determines its own level of assessment. Unlike most states, which only require one level of assessment statewide, New York State has hundreds of taxing jurisdictions, including school districts and counties, which do not share the same taxing boundaries as the cities and towns responsible for assessing properties (see New York State Department of Taxation and Finance, Equalization Rates, available at https://www.tax.ny.gov/pit/property/learn/eqrates.htm [last accessed Jan. 13, 2026]).
A class ratio refers to an assessment ratio that can apply to various types of properties. The residential assessment ratio (hereinafter RAR) is a specific class ratio used to determine the level of assessment for residential properties. It is a measurement of the overall ratio of the total assessed value of residential property in the municipality compared to the full market value (see New York State Department of Taxation and Finance, Residential Assessment Ratios [RARs], available at [*2]https://www.tax.ny.gov/research/property/equal/rar/index.htm [last accessed Jan. 13, 2026]). Equalization rates and RARs are calculated by the ORPTS and are made publically available.
A small claims assessment review (hereinafter SCAR) is an informal proceeding designed as an accessible means for an owner of residential property to challenge a tax assessment on a property improved by a one-, two-, or three-family owner-occupied residence. Governed by Real Property Tax Law article 7, title 1-A, the proceeding is designed to provide speedy and inexpensive relief for homeowners without strict rules of evidence or procedure. It serves as a streamlined alternative to a formal tax certiorari proceeding.
The grounds for challenging an assessment in a SCAR proceeding are "excessive assessment" and "unequal assessment." Excessive assessment is essentially an overvaluation, which occurs when the assessed value exceeds the property's full market value. Unequal assessment involves proving that the property was assessed at a higher percentage of market value than other similarly situated properties. The homeowner bears the burden of proof and must overcome the presumption that the assessor's valuation is correct.
The case at bar presents the question of whether an individual homeowner has standing to challenge an RAR issued by the ORPTS within the procedural framework of a SCAR proceeding. Given the lack of consistency in trial level determinations on this topic, we take this opportunity to clarify and address the interplay between title 1-A of article 7 of the RPTL and section 1218 of the RPTL, which governs review of determinations of the New York State Board of Real Property Tax Services (hereinafter the state board) related to state equalization rates. As set forth more fully below, we hold that RPTL 1218 does not deprive a homeowner of standing to challenge an RAR in a SCAR proceeding.I. Factual and Procedural History
A. The SCAR Proceedings
The petitioners, a group of 21 similarly situated residential property owners in the Village of Great Neck Estates, Nassau County, commenced 14 separate SCAR proceedings. In each case, the petitioners asserted claims of excessive and unequal assessment of their property tax assessments for the tax year 2021-2022, pursuant to RPTL 730(1). In June 2022, SCAR hearings were held. In support of their unequal assessment claims, the petitioners submitted, among other evidence, a ratio study based upon property sales that occurred in the Village the year prior. This ratio study supported an RAR of 94.83%, or 0.9483, compared to the RAR promulgated by the ORPTS, which supported a level of assessment of 100%, or 1.0.
In July 2022, in separate decisions, the SCAR hearing officer (hereinafter the hearing officer) denied the petitioners' SCAR applications, rejecting their claims of unequal assessment. While the hearing officer acknowledged the petitioners' "extensive evidence," the hearing officer concluded that "the argument centers on whether [the petitioners] can challenge the RAR at a SCAR hearing." The hearing officer found, based on review of all the evidence and testimony presented, that the "best evidence" was an order and judgment issued by Justice Leonard D. Steinman in Matter of Costigan v Assessor of the Vil. of Garden City (2021 NY Slip Op 33929[U] [Sup Ct, Nassau County]), which cited Matter of Fair Assessment Comm., LLC v New York State Off. of Real Prop. Servs. (65 AD3d 1143) for its standing analysis. On that basis, the hearing officer denied the petitioners' SCAR applications, concluding that pursuant to RPTL 1218, taxpayers lack standing to challenge equalization rates or class ratios. The hearing officer concluded that in each case, based on the comparable sales submitted by both parties, and using the RAR of 1.0, the petitioners failed to establish a right to reduction.
B. CPLR Article 78
The petitioners commenced this proceeding pursuant to CPLR article 78 to annul the hearing officer's determinations, contending that the SCAR applications should be remitted for a new determination before a different hearing officer. The petitioners argued, among other things, that the hearing officer's reliance on Matter of Fair Assessment demonstrated a misunderstanding of the parameters of RPTL 1218 as it related to standing to bring the subject SCAR applications. The respondents, Assessor of the Village of Great Neck Estates and Board of Assessment Review of the Village of Great Neck Estates, cross-moved pursuant to CPLR 3211(a) and 7804(f) to dismiss the petition. The respondents argued, among other things, that the hearing officer's denials of the SCAR applications were supported by a rational basis and that the hearing officer correctly deteremined that the petitioners lacked standing to challenge the RAR.
In an order and judgment entered July 26, 2023, the Supreme Court granted the [*3]respondents' cross-motion to dismiss the petition, denied the petition, and dismissed the proceeding. As to the issue before us, the Supreme Court, applying RPTL 1218, held that an individual taxpayer does not have standing to challenge the RAR directly in a plenary or other action against the ORPTS. Similarly, the court held that a petitioner cannot be found to have standing to mount a collateral attack on the RAR in a SCAR proceeding (see Matter of Yeung v Assessor of the Vil. of Great Neck Estates, 80 Misc 3d 941, 948 [Sup Ct, Nassau County]). The court reasoned that to conclude otherwise would be contrary to this Court's decision, order, and judgment in Matter of Fair Assessment. The petitioners appeal.II. Legal Analysis
A. Statutory Framework1. RPTL Article 12: State Equalization Rates
Article 12 of the RPTL addresses establishment of and challenge to state equalization rates. "An equalization rate is the ratio between the assessed valuation of all taxable real property within the taxing entity and the full market value of that property, expressed as a percentage" (Matter of Town of Yorktown v State Bd. of Real Prop. Servs., 275 AD2d 789, 790; see RPTL 1202[1][a]). New York State is charged with the task of establishing statewide equalization rates through the ORPTS. The establishment of statewide equalization rates is important, as it impacts the apportionment of state taxes and aid (see Matter of Town of Yorktown v State Bd. of Real Prop. Servs., 275 AD2d at 790).
Judicial review of equalization rates is conferred by statute in RPTL 1218 (see Matter of Town of Rye v New York State Bd. of Real Prop. Servs., 10 NY3d 793, 794-795). This statute creates a right to seek review of certain determinations made by the ORPTS (see Matter of Town of Riverhead v New York State Off. of Real Prop. Servs., 21 AD3d 1116, 1117-1118). However, it "expressly limits those entitled to seek judicial review to directly affected municipalities whose own 'rate or rates were established' by the State Board" (Matter of Town of Rye v New York State Bd. of Real Prop. Servs., 10 NY3d at 795, quoting RPTL 1218; see Matter of Town of Riverhead v New York State Bd. of Real Prop. Servs., 5 NY3d 36, 43) and not property owners (see Matter of Town of Riverhead v New York State Off. of Real Prop. Servs., 21 AD3d at 1118). It is well settled that individual taxpayers lack standing to challenge equalization rates under RPTL 1218 (see Matter of Town of Rye v New York State Bd. of Real Prop. Servs., 10 NY3d at 795; Matter of Fair Assessment Comm., LLC v New York State Off. of Real Prop. Servs., 65 AD3d at 1144; Matter of Town of Riverhead v New York State Off. of Real Prop. Servs., 21 AD3d at 1118; Matter of Town of Riverhead v New York State Bd. of Real Prop. Servs., 7 AD3d 934, affd 5 NY3d 36; see generally Matter of West End Neighborhood Taxpayers, Inc. v New York State Bd. of Real Prop. Servs., 39 AD3d 764, 765).
RPTL 1218 provides that
"[a] final determination of the state board of real property tax services relating to state equalization rates may be reviewed by commencing an action in the appellate division of the supreme court in the manner provided by [CPLR article 78] upon application of the county, city, town or village for which the rate or rates were established."
Courts in New York State have broadly interpreted the Legislature's use of the phrase "relating to." The Court of Appeals has held that the language "relating to state equalization rates" also includes segment equalization rates, a subset of state equalization rates, as both "reflect the percentage of full value at which real property situated in a given locale is assessed" (Matter of Town of Riverhead v New York State Bd. of Real Prop. Servs., 5 NY3d at 42). In Matter of Fair Assessment (65 AD3d at 1144), upon which the hearing officer and the Supreme Court relied, this Court determined that RPTL 1218, which governs challenges to equalization rates, also governs challenges to class ratios, "since class ratios are a species or subset of equalization rates that are applicable only in special assessing units."2. RPTL Article 7, Title 1-A Special Proceeding for SCAR
RPTL article 7, title 1-A, which was enacted by the Legislature in 1981, provides homeowners with an efficient, inexpensive, and simple alternative to the complex and formal tax certiorari proceeding (see Matter of Town of New Castle v Kaufmann, 72 NY2d 684, 686; Matter of Leone v Board of Assessors, 100 AD3d 635, 636; Harry O. Lee & Wilford A. LeForestier, Review and Reduction of Real Property Assessments in New York). The procedure for review of such claims is set forth in RPTL 730.
"Prior to the enactment of RPTL 730, residential taxpayers who sought review of real property tax assessments were required to commence a formal tax certiorari proceeding in Supreme Court pursuant to RPTL article 7" (Matter of Town of New Castle v Kaufmann, 72 NY2d at 686). These formal tax certiorari proceedings were considered to be complex and expensive and created a substantial burden for individual residential taxpayers (see id.; Matter of Yee v Town of Orangetown, 76 AD3d 104, 108). The Legislature enacted RPTL 730 to cure this inequity and protect the wrongfully assessed homeowner by affording speedy and inexpensive relief to such persons through a simplified review procedure (see Matter of Yee v Town of Orangetown, 76 AD3d at 108; Matter of Meola v Assessor of Town of Colonie, 207 AD2d 593, 594; Governor's Mem approving L 1981, ch 1022, 1981 NY Legis Ann at 528).
In evaluating tax assessments at a SCAR hearing, the hearing officer is "vested with the discretion to consider a wide variety of sources and information" (Matter of Yee v Town of Orangetown, 76 AD3d at 108-109; see Matter of Meirowitz v Board of Assessors, 53 AD3d 549, 550). The hearing officer "shall consider the best evidence presented in each particular case" (RPTL 732[2]) and is required to determine all questions of fact and law de novo (see id. § 732[4]; Matter of Klein v Department of Assessment, 149 AD3d 935, 936-937). Pursuant to RPTL 732(2), such evidence "may include, but shall not be limited to" the most recent equalization rate established for such assessing unit, the RAR promulgated by the state board, the uniform percentage of value stated on the related tax bill, and the assessment of comparable residential properties within the same assessing unit.
The RAR is a figure calculated by the Commissioner of Taxation and Finance (hereinafter the commissioner) in accordance with RPTL 738, specifically for use in title 1-A proceedings.
"The RAR is the median value in a list of ratios of the assessed valuation to sales price of residential properties sold at arm's length in the assessing unit during a preceding one-year period. . . . Its purpose is to demonstrate by recent market experience the relationship between the assessed valuation and the full value, expressed as a percentage, of residences in the assessing unit, and thereby to establish the average percentage of full value at which the residential property in the assessing unit is assessed" (Matter of Pace v Assessor of Town of Islip, 252 AD2d 88, 91 [citation omitted]; see Harry O. Lee & Wilford A. LeForestier, Review and Reduction of Real Property Assessments in New York § 1.13).
According to the statute, the RAR "shall be equal to the level of assessment of residential property in the assessing unit as determined in the market value survey used or to be used to calculate the state equalization rate for that assessment roll pursuant to [RPTL article 12]" (id. § 738[1][a]). "The commissioner shall increase or decrease the residential assessment ratio to account for a change in level of assessment in the total assessed value of residential real property or, if not available, of all taxable real property" (id. § 738[1][b]).
A claim for "excessive assessment" is commonplace and relatively straight forward. It is defined by RPTL 729(2), inter alia, as "an entry on an assessment roll of the assessed valuation of real property which exceeds the full value of such real property" (id. § 729[2][a]). Where a property owner argues that the assessed value exceeds the fair market value of their property, they need only provide evidence of the true fair market value of the property. To make such a showing, the homeowner may provide such evidence as, among other things, a recent purchase price for the property, a professional appraisal, or proof of the sales prices or appraised values of comparable properties (see Matter of Silverman v Town of Huntington, 160 AD3d 752, 752-753).
A claim for "unequal assessment" is more complex. This claim is defined by RPTL 729(4), inter alia, as "an entry on an assessment roll of the assessed valuation of real property improved by a one, two or three family residential structure which is made at a higher proportion of full value than [the] assessed valuation of other residential real property on the same roll" (id. § 729[4][a]). "Where . . . a property owner alleges an unequal assessment, he or she is required to prove that the subject property is assessed at a higher percentage of full market value than either (1) the average of all other property on the assessment roll or (2) the average of residential property on the assessment roll" (Matter of Silverman v Town of Huntington, 160 AD3d at 752-753; see RPTL 729[4]; Matter of Greenfield v Town of Babylon Dept. of Assessment, 76 AD3d 1071, 1074). To [*4]make such a showing, the homeowner must first establish the full market value of his or her own property and then adduce proof of the appropriate percentage of value to be used to determine the correct assessment (see Matter of Silverman v Town of Huntington, 160 AD3d at 752-753; Matter of Greenfield v Town of Babylon Dept. of Assessment, 76 AD3d at 1074-1075; Matter of Pace v Assessor of Town of Islip, 252 AD2d at 90). "That proof may take the form of the equalization rate or the Residential Assessment Ratio established for the assessing unit, the assessor's statement of percentage, or the assessments of comparable residential properties" (Matter of Pace v Assessor of Town of Islip, 252 AD2d at 90, citing State Board of Real Property Services, A Taxpayer's Guide: How to File a Complaint on Your Assessment, at 1 [Jan. 1998 rev.]; see RPTL 732[4]). "Through this proof the homeowner must show that the assessed valuation of his or her property is at a higher percentage of its full market value than the percentage that the proof establishes to be the appropriate one for the assessing unit" (Matter of Pace v Assessor of Town of Islip, 252 AD2d at 90-91). "Ordinarily, the full market value of the property is multiplied by the RAR. If the resulting figure is less than the assessed valuation of the property, the homeowner has demonstrated unequal assessment" (id. at 91).
Ultimately, the hearing officer's decision "shall state the findings of fact and the evidence upon which it is based" (RPTL 733[4]; see Matter of DeSousa v Town of Babylon, 170 AD3d 1172, 1173; Matter of Klein v Department of Assessment, 149 AD3d at 937). "The proceedings are to be conducted 'in such manner as to do substantial justice between the parties according to the rules of substantive law' and '[t]he petitioner shall not be bound by statutory provisions or rules of practice, procedure, pleading or evidence'" (Matter of Yee v Town of Orangetown, 76 AD3d at 109, quoting RPTL 732[2]). Once a homeowner opts to commence a SCAR proceeding, that property owner waives his or her right to commence a formal tax certiorari proceeding in the Supreme Court under RPTL article 7, title 1-A (see RPTL 736[1]; Matter of Klein v Department of Assessment, 149 AD3d at 937; Matter of Yee v Town of Orangetown, 76 AD3d at 109).
B. Standing in SCAR Proceedings
This statutory framework demonstrates that RPTL 1218 operates independently from section 732. RPTL 1218 addresses the ability of a municipality or like assessing entity to challenge the equalization rate set by the state board, for the purpose of changing the RAR on a county or statewide basis. It, therefore, cannot be interpreted as precluding an individual taxpayer from impeaching the RAR within the limited context of a SCAR proceeding. Such a challenge only serves to alter the measuring tool used in the SCAR hearing itself and has no broader probative or precedential value for other taxpayers, counties, municipalities, or even future SCAR hearings. These hearings are informal, and therefore, the evidence presented therein exists in a vacuum, independent of the broader statewide tax system.
It is well settled that when presented with a question of statutory interpretation, a court's primary consideration is to ascertain and give effect to the intention of the legislature (see Matter of 160 E. 84th St. Assoc. LLC v New York State Div. of Hous. & Community Renewal, 43 NY3d 275, 282; Kuzmich v 50 Murray St. Acquisition LLC, 34 NY3d 84, 91). "'Inasmuch as the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof'" (Matter of 160 E. 84th St. Assoc. LLC v New York State Div. of Hous. & Community Renewal, 43 NY3d at 282 [internal quotation marks omitted], quoting Kuzmich v 50 Murray St. Acquisition LLC, 34 NY3d at 91). The Court of Appeals has long held that "'in construing the language of a statute, the courts should look for the intention of the People and give to the language used its ordinary meaning'" (Matter of Hoffmann v New York State Ind. Redistricting Commn., 41 NY3d 341, 359, quoting Matter of Sherrill v O'Brien, 188 NY 185, 207).
While the respondents correctly assert that there is no express statutory authority within RPTL article 7, title 1-A that addresses a homeowner's right to challenge or collaterally impeach the use of the RAR promulgated by the commissioner, RPTL 732(2) expressly confers property owners the right to present the hearing officer with the "best evidence." Specifically within the context of RPTL 730, the Court of Appeals has stated that literal and narrow interpretations of the RPTL should be avoided, particularly where such a narrow construction "would deny expedited and inexpensive review to homeowners and thus frustrate the statutory objectives" (Matter of Town of New Castle v Kaufmann, 72 NY2d at 686; see Matter of Manouel v Board of Assessors, 25 NY3d [*5]46, 50). Here, the Legislature's inclusion of the language "may include, but shall not be limited to" unequivocally indicates that the examples of such evidence listed in section 732(2) are not exhaustive. Notably, the Legislature did not include language in RPTL article 7, title 1-A prohibiting a petitioner from challenging or collaterally attacking the RAR promulgated by the commissioner or any language that calls into question a homeowner's standing to challenge equalization rates.
The language of the statute does, however, expressly require the proceedings to be conducted "in such manner as to do substantial justice between the parties according to the rules of substantive law" (RPTL 732[2]). In so doing, RPTL 732(2) provides that the "petitioner shall not be bound by statutory provisions or rules of practice, procedure, pleading or evidence."
It is the opinion of this Court that to conduct the proceedings in a manner that does substantial justice between the parties, RPTL article 7, title 1-A must be interpreted as conferring homeowners with standing to challenge the RAR promulgated by the ORPTS or to mount a "collateral attack" on the RAR by providing their own ratio study with an alternative ratio, within the limited context of that SCAR proceeding. To hold otherwise would frustrate the purpose of the statute, which is to provide property owners with an efficient, inexpensive, and simple alternative to the complex and formal tax certiorari proceeding.
Similar to the respondents' overly narrow construction of RPTL 732(2), the broad and overreaching interpretation of RPTL 1218 applied to SCAR hearings, utilized by the hearing officer and the Supreme Court, serves to deprive homeowners of the judicial remedy for inequality that is clearly defined by the Legislature in RPTL article 7, title 1-A and would effectively eradicate a homeowner's ability to succeed on a claim of unequal assessment. Such an interpretation would further preclude a SCAR challenge should the ORPTS make a mathematical error or rely upon erroneous data in computing the RAR.
In the case at bar, the hearing officer found that the "best evidence" was an order and judgment issued by Justice Leonard D. Steinman in Matter of Costigan v Assessor of the Vil. of Garden City (2021 NY Slip Op 33929[U]) and determined that the homeowners lacked standing to challenge the equalization rates. Thereafter, the Supreme Court, relying on RPTL 1218, held that "an individual taxpayer does not have standing to challenge the RAR directly in a plenary or other action against [the] ORPTS and neither can a petitioner be found to have standing to mount a 'collateral attack' on the RAR in a SCAR proceeding" (Matter of Yeung v Assessor of the Vil. of Great Neck Estates, 80 Misc 3d at 948 [citations omitted]). The court determined that to conclude otherwise would be contrary to this Court's decision in Matter of Fair Assessment.
The reliance of the Supreme Court and the hearing officer on Matter of Fair Assessment is misplaced. In Matter of Fair Assessment, this Court dismissed the proceeding, determining that challenges to equalization rates within the meaning of RPTL 1218 includes challenges to class ratios (see Matter of Fair Assessment Comm., LLC v New York State Off. of Real Prop. Servs., 65 AD3d at 1144) and, therefore, concluded that since taxpayers do not have standing to challenge an equalization rate under RPTL 1218, they lack standing to challenge a class ratio (see Matter of Fair Assessment Comm., LLC v New York State Off. of Real Prop. Servs., 65 AD3d at 1143-1144). Matter of Fair Assessment is distinguishable from the instant matter, as the CPLR article 78 petition in that case sought review of the class one ratio for tax year 2007, applicable throughout Nassau County. Whereas here, the petitioners, residential homeowners, sought to challenge an RAR within the limited context of their SCAR proceedings.
Trial courts in New York State have had varying interpretations on this issue. A recent example is the decision in Matter of Costigan v Assessor of the Vil. of Garden City (2021 NY Slip Op 33929[U], *3). There, in a matter factually analogous to the instant case, the court initially agreed with the hearing officer's determination that the petitioners lacked standing to challenge the RAR. Relying on this Court's decision in Matter of Fair Assessment, the Supreme Court reasoned that taxpayers do not have standing to challenge equalization rates or class ratios, denied the petition pursuant to CPLR article 78, and dismissed the proceeding (see Matter of Costigan v Assessor of the Vil. of Garden City, 2021 NY Slip Op 33929[U], *3). However, upon reargument, the court reversed course, granted the petition, and remitted the matter for new hearings (see Matter of Costigan v Assessor of the Vil. of Garden City, 2022 NY Slip Op 34587[U], *3-4 [Sup Ct, Nassau County]). Upon reargument, the court correctly reasoned, as we do herein, that RPTL 1218 has no bearing on SCAR proceedings or the evidence that may be introduced in such proceedings (see Matter of Costigan v Assessor of the Vil. of Garden City, 2022 NY Slip Op 34587[U], *3-4; see e.g. Matter of Donin v Assessor of the Inc. Vil. of Freeport, 2025 NY Slip Op 31286[U], *4 [Sup Ct, Nassau [*6]County]; Matter of Ziegler v Assessor of the Vil. of Rockville Ctr., Sup Ct, Nassau County, Sept. 22, 2023, Sher, J., index No. 616672/22; Matter of Hayre v Assessor of the Vil. of Floral Park, Sup Ct, Nassau County, July 11, 2023, Jimenez, J., index No. 616006/22; Matter of Vollono v Assessor of the Vil. of Freeport, Sup Ct, Nassau County, Apr. 6, 2023, Marber, J., index No. 611096/21; Matter of Macias v Levinson, Sup Ct, Nassau County, Mar. 29, 2007, Winslow, J., index No. 17744/06; Matter of Agosh v Town of Cicero Bd. of Assessment Review, 150 Misc 2d 756, 759 [Sup Ct, Onondaga County]; Katz v Assessor of Vil. of Southampton, 131 Misc 2d 552 [Sup Ct, Suffolk County]; cf. Matter of Sandie v Assessor of the Vil. of Rockville Ctr., Sup Ct, Nassau County, Dec. 6, 2023, Singer, J., index No. 602448/23; Matter of Kiernan v Assessor of the Vil. of Rockville Ctr., Sup Ct, Nassau County, Oct. 25, 2023, Marber, J., index No. 616673/22; Matter of Zhang v Assessor of the Vil. of Great Neck Estates, Sup Ct, Nassau County, Sept. 18, 2023, Daly-Sapraicone, J., index No. 616682/22; Matter of Keller v Assessor of the Vil. of Garden City, Sup Ct, Nassau County, Aug. 15, 2023, Quinn, J., index No. 616001/22).
While SCAR proceedings have been considered by this Court, ultimately, the question of standing has not yet been addressed. In Matter of Leone v Board of Assessors (100 AD3d at 637), the petitioners claimed that the hearing officer erroneously concluded that the petitioners could not properly challenge the RAR in the context of a SCAR hearing and, therefore, failed to consider the petitioners' evidence on the proper ratio. However, in that case, this Court did not reach that contention, holding that the common issues of fact and law warranted employment of a joint CPLR article 78 petition and that, therefore, the petition should have been determined on the merits (see Matter of Leone v Board of Assessors, 100 AD3d at 637; see also Matter of Zhonghui Chen v Department of Assessment of the County of Nassau, 243 AD3d 576, 578 [SCAR hearing but no standing issue raised]).
C. Application of the Law in this Case
Judicial review of a hearing officer's determination in a SCAR hearing is limited to commencement of a proceeding pursuant to CPLR article 78 (see RPTL 736[2]; Matter of Klein v Department of Assessment, 149 AD3d at 937; Matter of Yee v Town of Orangetown, 76 AD3d at 109). When a hearing officer's determination is contested, "the court's role is limited to ascertaining whether that determination has a rational basis, that is, whether it is not affected by an error of law or not arbitrary and capricious" (Matter of DeSousa v Town of Babylon, 170 AD3d at 1173 [citations omitted]; see CPLR 7803[3]; Matter of Meirowitz v Board of Assessors, 53 AD3d at 550; Matter of Gershon v Nassau County Assessment Review Commn., 29 AD3d 909, 909).
Here, the petitioners commenced a proceeding pursuant to CPLR article 78 concerning their asserted claims of unequal assessment of their property tax assessments for the tax year 2021-2022. The hearing officer did not consider the ratio study submitted by the petitioners, which, based upon sales in the prior year, supported an RAR of 94.83%, or 0.9483. Rather, the hearing officer found that the "best evidence" was an order and judgment issued by Justice Leonard D. Steinman in Matter of Costigan v Assessor of the Vil. of Garden City (2021 NY Slip Op 33929[U]), determined that the petitioners lacked standing to challenge the equalization rates, and applied the RAR of 1.0. On that basis, the hearing officer held that the petitioners failed to establish a right to reduction and denied the applications.
Under these circumstances, the hearing officer's determination denying the petitioners' SCAR applications lacked a rational basis and was arbitrary and capricious. Contrary to the respondents' contention, there is no dispute that the hearing officer was within its authority to consider and apply the RAR of 1.0 as promulgated by the ORPTS. Rather, in the case at bar, it was the hearing officer's failure to consider the petitioners' ratio study and determination that they lacked standing to challenge the RAR that was arbitrary and capricious, as it was contrary to law.
Further, the record does not support the respondents' assertion that the hearing officer's decision to utilize the RAR of 1.0 was "rationally based on the evidence presented," that no evidence was excluded, or that it is evident from the hearing officer's determinations that the hearing officer gave due consideration to the ratio study. Rather, the record demonstrates that the hearing officer acknowledged the petitioners' "detailed and extensive" arguments challenging the RAR but nonetheless concluded that "[a] taxpayer does not have standing to challenge an equalization rate (or class ratio)" and denied the challenge to the class ratio. As the hearing officer declined to consider all the evidence and considered the "best evidence" to be a case applying an inapplicable rule of law, the proceedings were not conducted in such manner as to do substantial justice between the parties and according to the rules of substantive law as required by RPTL 732(2).[*7]III. Conclusion
The Supreme Court improperly denied the petition pursuant to CPLR article 78 and improperly granted the cross-motion pursuant to CPLR 3211(a) and 7804(f) to dismiss the petition. The hearing officer's determinations denying the petitioners' SCAR applications were arbitrary and capricious and lacked a rational basis in the law.
In light of our determination, we need not reach the parties' remaining contentions.
Accordingly, the order and judgment is reversed, on the law, the respondents' cross-motion pursuant to CPLR 3211(a) and 7804(f) to dismiss the petition is denied, the petition is granted, the determinations dated July 15, 2022, are annulled, and the matters are remitted to the SCAR hearing officer for further proceedings consistent herewith. Upon remittal, the hearing officer may, in the exercise of discretion, order a de novo hearing prior to determining the petitioners' SCAR applications (see Matter of DeSousa v Town of Babylon, 170 AD3d at 1174).
CONNOLLY, J.P., DOWLING and LOVE, JJ., concur.
ORDERED that the order and judgment is reversed, on the law, with costs, the respondents' cross-motion pursuant to CPLR 3211(a) and 7804(f) to dismiss the petition is denied, the petition is granted, the determinations dated July 15, 2022, are annulled, and the matters are remitted to the small claims assessment review hearing officer for further proceedings consistent herewith.
ENTER:
Darrell M. Joseph
Clerk of the Court